NO. 07-04-0497-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



MAY 9, 2005


______________________________



JERRY GLENN REYNOLDS, II, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;



NO. 2003-486,135; HON. DRUE FARMER, PRESIDING


_______________________________



Before QUINN, REAVIS, and CAMPBELL, JJ.

 Appellant, Jerry Glenn Reynolds, II, appeals his conviction for driving while
intoxicated (DWI). His seven issues involve the trial court's refusal to "suppress" evidence
the State purportedly intended to offer at trial. We affirm the judgment.

Background


 On September 20, 2003, at around 2:00 p.m., Trooper Michael Parker was working 
near Buffalo Lake outside of Lubbock where a festival attended by a number of college
students was occurring. He was parked on the side of the road when he observed a sport
utility vehicle without a front license plate. After stopping the vehicle, he asked appellant,
who drove the SUV, to exit. As appellant did, the officer smelled a moderate odor of
alcohol surrounding appellant and noticed that his eyes were red and glassy. When asked
if he had anything to drink, appellant replied that he had a few beers at a campsite near the
festival. The officer then had appellant perform field sobriety tests and undergo a portable
breath test. Thereafter, he was arrested and transported to the Lubbock County jail. Upon
arriving at that destination, he underwent an intoxilyzer test. 

 Prior to trial, appellant attempted to "suppress" the results of the sobriety and breath
tests. The trial court denied his motions. As a consequence, appellant entered a plea of
guilty and appealed the rulings. 

Issue One - Reasonable Suspicion for Detention


 In his first issue, appellant argues that the trooper lacked reasonable suspicion to
detain him for the purpose of conducting and subjecting him to field sobriety tests. We
overrule the issue.

 We review the trial court's ruling on a motion to suppress under the standard
announced in Johnson v. State, 68 S.W.3d 644 (Tex. Crim. App. 2002) and Guzman v.
State, 955 S.W.2d 85 (Tex. Crim. App. 1997). Thus, we give almost total deference to the
trial court's findings of historical fact and review de novo the application of the law to the
facts. Johnson v. State, 68 S.W.3d at 652-53. So too do we consider the totality of the
circumstances in determining whether the officer had reasonable suspicion upon which to
detain appellant. Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). 

 Appellant does not challenge the legality of the initial stop for operating a vehicle
without a front license plate. Rather, he contends that his continued detention after being
told that he would receive a warning was improper. We disagree. Before stopping
appellant, the officer knew that an "all day" festival attended by many college students was
ongoing at Buffalo Lake, the venue from which appellant was leaving. Furthermore, after
the stop, appellant emitted the odor of alcohol and had bloodshot eyes. And, when asked
if he had been drinking, appellant admitted that he had drunk several alcoholic beverages
while at a campsite in or near the festival's venue. These circumstances were enough to
vest the trooper with reasonable suspicion to detain appellant and further investigate the
possibility of his involvement in the criminal act of driving while intoxicated. See State v.
Brabson, 899 S.W.2d 741, 749 (Tex. App.-Dallas 1995), aff'd, 976 S.W.2d 182 (Tex. Crim.
App. 1998) (holding that reasonable suspicion to detain arose when the suspect honked
his horn excessively and emitted a strong odor of alcohol); Powell v. State, 5 S.W.3d 369,
377 (Tex. App.-Texarkana 1999, pet. ref'd) (holding that an officer may continue the
detention after an initial stop if he develops reasonable suspicion to believe that the
detainee was engaged in criminal activity). Appellant's citation to our opinion in Domingo
v. State, 82 S.W.3d 617 (Tex. App.-Amarillo 2002, no pet.) does not persuade us
otherwise.

 In Domingo, the only circumstance the officer relied upon to detain the suspect was
the odor of alcohol on his breath. Id. at 621. We noted that the officer said nothing about
the detainee's speech or eyes being abnormal. Id. Nor did the officer have any indication
of the number of beers Domingo had consumed. Those missing indicia, however, are
present here. Again, not only did appellant smell of alcohol but also he had bloodshot eyes
and admitted to drinking several beers. Given this, our decision in Domingo does not
control the outcome here.

Issue Two - Predicate for Admission of Breath Test Results


 In his second issue, appellant contends that the trial court erred in refusing to
suppress the results of the intoxilyzer or second breath test. Suppression is warranted,
according to appellant, because the person who gave appellant the breath test did not
understand its scientific theory. We overrule the issue.

 Authority holds that the individual performing the test upon the suspect need not
understand the scientific theory of the intoxilyzer. Scherlie v. State, 689 S.W.2d 294, 296-97 (Tex. App.-Houston [1st Dist.] 1985), aff'd on other grounds, 715 S.W.2d 653 (Tex. Crim.
App. 1986). Rather, it need only be shown that the machine and its operator were under
the periodic supervision of one who had an understanding of the scientific theory underlying
the machine. Hill v. State, 158 Tex. Crim. 313, 256 S.W.2d 93, 96 (1953), overruled on
other grounds by Vasquez v. State, 477 S.W.2d 629 (Tex. Crim. App. 1972); Scherlie v.
State, 689 S.W.2d at 296-97. Moreover, appellant does not contend that the Hill standard
was not satisfied; this may be so due to the record containing evidence upon which the trial
court could have legitimately concluded that it was. Consequently, we hold that the trial
court did not abuse its discretion when it rejected this ground of attack.

Issue Three - Suppression of Breath Test Results


 Appellant next argues that the results of the intoxilyzer or breath test should be
suppressed because they were illegally obtained. They purportedly were so obtained
because the trooper provided appellant with information beyond that prescribed by statute. 
The statutes involved are subsections one and two of §724.015 of the Texas Transportation
Code. (1) We overrule the issue for the following reasons. 

 First, the comments cited by appellant involve the trooper describing how taking a
breath test may enhance appellant's release. None were admonitions about what could
occur if appellant refused to submit to the test, and it is the latter type of utterances that are
generally impermissible, not the former. Erdman v. State, 861 S.W.2d 890, 893-94 (Tex.
Crim. App. 1993); Sandoval v. State, 17 S.W.3d 792, 795-97 (Tex. App.-Austin 2000, pet.
ref'd). 

 Second, appellant says nothing, in his brief, about how the statements made by the
trooper caused him to submit to the test. He simply argues that they were coercive. Yet,
authority obligates him to not only show that statements in addition to those mentioned in
§724.015 were made but also that there existed a causal connection between them and
his agreement to undergo testing. Sandoval v. State, 17 S.W.3d at 796; accord Collins v.
State, No 05-01-01177-CR, 2002 Tex. App. LEXIS 5554 at 17-18 (Tex. App.-Dallas 2000,
no pet.) (not designated for publication) (so recognizing). Given this default by appellant,
we must conclude that he did not carry his burden on appeal to show error.

Issue Four - Rule 403 Objection


 Appellant argues in his fourth issue that the trial court erred in overruling his pretrial
Rule 403 objection to the admission of the intoxilyzer results. (2) Exclusion is allegedly
warranted because the probative value of the results was substantially outweighed by the
prejudice attendant to their admission. We overrule the issue. 

 The argument before us is founded upon the supposed lack of evidence establishing
the pertinent retrograde extrapolation. That is, because the intoxilyzer test was performed
about an hour after appellant was first stopped, it allegedly was incumbent upon the State
to tender evidence linking the results of the test to appellant's condition an hour earlier. If
it did not, according to appellant, then the relevancy of the results would be substantially
outweighed by the chance that they would mislead the jury into viewing them as indication
that appellant was drunk at the time of the stop. 

 The problem with appellant's argument is twofold. First, he cites us to no authority
holding that the State must satisfy the requirements of Rule 403 in a pretrial hearing. 
Again, the trial court addressed the dispute during a pretrial hearing, not during trial. 
Second, to sustain appellant's contention, we would have to assume that the State would
or could not present evidence permitting the jury to engage in retrograde extrapolation at
trial. That is, we would have to assume that the State could not cure the supposed defect
if and when the cause was actually tried. Yet, we are unwilling to so speculate especially
when the appellant himself fails to engage in such speculation. Indeed, while it may be that
the deputies who testified at the pretrial hearings knew little of retrograde extrapolation, that
does not permit one to reasonably infer that the State lacked access to an expert or other
witness who could and would have supplied the requisite information at trial. 

 Simply put, the question of whether or not the admission of the intoxilyzer results
violated Rule 403 was presented to the trial court somewhat prematurely and without
complete development. And, because it was, we cannot say that the trial court abused its
discretion in overruling appellant's attempt to "suppress" the intoxilyzer results at the time
he attempted to do so. 




Issues Five and Six - Horizontal Gaze Nystagmus Test


 In his fifth and sixth issues, appellant complains that the trial court should have
suppressed the admission of the results of the horizontal gaze nystagmus (HGN) test
because there was insufficient evidence illustrating that the trooper was certified to
administer the test and to show that the test was properly administered and interpreted. 
We overrule the issues.

 For an officer to testify as an expert on the administration of an HGN test, it need
only be shown that he received from the State of Texas a practitioner's certification to
administer the test. Emerson v. State, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994); Held
v. State, 948 S.W.2d 45, 51 (Tex. App.-Houston [14th Dist.] 1997, pet. ref'd). Here, Trooper
Parker testified that he had been certified by the Texas Department of Public Safety since
1997. So too did he state that he received his training at the academy in Austin and
through Texas A&M University. Moreover, the record illustrates that he also took a
refresher course in 2003. We find this evidence sufficient to establish that the trooper was
an expert, and reject appellant's contention that the trial court abused its discretion when
refusing to hold otherwise.

 As to the remaining allegation, appellant asserts that the evidence failed to show that
the trooper administered the HGN test properly. This is so, he argues, because although
the officer testified that he observed a total of six clues on the test, he failed to state what
those clues were or specifically explain how appellant performed on the test. Authority
holds that in administering the test, an officer must look for the following clues in each eye:
1) lack of smooth pursuit, 2) distinct nystagmus at maximum deviation, and 3) onset of
nystagmus prior to 45 degrees. Compton v. State, 120 S.W.3d 375, 377 (Tex.
App.-Texarkana 2003, pet. ref'd). Slight variations in the test do not render the evidence
inadmissible. Id. at 378. Here, the evidence illustrates that the trooper first inquired
whether appellant wore contact lens. Then, he checked for equal pupil size and tracking
by moving his finger all the way to appellant's left shoulder and then to the right. Next, he
looked for smooth pursuit by making two passes with his finger during which he observed
two clues. Then he checked for distinct nystagmus at maximum deviation. He described
how that test was performed and stated he observed jerking of both eyes which also
constituted two clues. Finally, the officer checked for onset nystagmus prior to 45 degrees
and described how he did so. In all, he observed six clues. Thus, the officer described 1)
how each test was performed, 2) what he was looking for (i.e. jerking movements), and 3)
how he counted six clues. And, because he described what he was looking for and how
he found six "clues," the trial court could have reasonably inferred that the "clues" to which
he alluded were jerking motions. Given this, the trial court had before it reasonable basis
to conclude that the requirements of Compton were satisfied. 

 Appellant does not point to any specific instances in which the officer failed to
properly perform the tests. Instead, he seems to complain that the officer did not
adequately report the results of those tests. (3) In support of that complaint, he cites to the 
DWI Detection and Standardized Field Sobriety Testing manual published by the National
Highway Traffic Safety Administration which states that in order to secure a conviction, the
"officer must be able to describe how the suspect performed on the tests, and exactly what
the suspect did." (4) (Emphasis in original). Even assuming that this authority is properly
before the court and that we may consider it, the testimony of Trooper Parker at the time
it was given was not being offered to secure a conviction but rather to enable the trial court
to determine whether the factfinder would be allowed to hear it. We find no abuse of
discretion here.

Issue Seven - Suppression of One-Legged Stand Test


 In his final issue, appellant contends the trial court should have suppressed the
results of that portion of the field sobriety tests dealing with the one-legged stand. He
believes that suppression was warranted because the State did not establish the predicate
for their admission. We overrule the issue for it was not preserved. That is, appellant
argues before us that the evidence was inadmissible because the State did not satisfy the
"first two prongs of the Kelly test in regard to the one-leg stand." Yet, below he argued that
it was inadmissible because the evidence failed to show that the ground was level when
appellant was asked to stand on one leg. Since the argument on appeal fails to comport
with that mentioned below, the former was not preserved. Washington v. State, 152
S.W.3d 209, 213 (Tex. App.-Amarillo 2004, no pet.). Having overruled each issue raised
by appellant, we affirm the judgment of the trial court.


 Brian Quinn 

 Justice 


Publish.

 

 
1. They state that before requesting a breath specimen, an officer must inform the person that if he
refuses to provide the specimen 1) evidence of the refusal may be admissible in a subsequent prosecution
and 2) the person's driver's license will be automatically suspended for not less than 180 days whether or not
the person is subsequently prosecuted as a result of the arrest. Tex. Transp. Code Ann. §724.015 (1) & (2)
(Vernon Supp. 2004-05)
2. Pursuant to Rule 403, relevant evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Tex. R. Evid.
403.
3. Appellant did not question the officer, at the hearing on the motion to suppress, about the matters
at issue here.
4. This manual does not appear in the record before us although a copy is attached to appellant's brief. 
Appellant did not request either the trial court or this court to take judicial notice of the manual, although the
trial court did inform appellant it was not necessary to offer it into evidence.